UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CARMEN PANIAGUA,

                   Plaintiff,

         -against-

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.
------------------------------------------------------------X

**OPINION AND ORDER**

21 Civ. 10100 (JCM)

       Plaintiff Carmen Paniagua ("Plaintiff") commenced this action on November 27, 2021 pursuant to 42 U.S.C. § 405(g), challenging the decision of the Commissioner of Social Security (the "Commissioner"), which found Plaintiff not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. (Docket No. 1).[1]  Presently before the Court are: (1) Plaintiff's motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, (Docket No. 18), accompanied by a memorandum of law, (Docket No. 19) ("Pl. Br."); (2) the Commissioner's cross-motion for judgment on the pleadings, (Docket No. 21), accompanied by a memorandum of law, (Docket No. 22) ("Comm'r Br."); and (3) Plaintiff's reply in support of Plaintiff's motion for judgment on the pleadings, (Docket No. 23) ("Pl. Reply").  For the reasons set forth herein, Plaintiff's motion is granted in part and denied in part, the Commissioner's cross-motion is denied, and the case is remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Opinion and Order.

---

[1] This action is before the undersigned for all purposes on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Docket No. 14).

## I. BACKGROUND

Plaintiff was born on May 24, 1970. (R.[2] 192).  Plaintiff applied for DIB and SSI on February 26, 2013, alleging a disability onset date of February 13, 2013. (R. 192-205; 60; 67-68).  On May 2, 2013, Plaintiff's claim was initially denied. (R. 76-81).  Plaintiff then requested an administrative hearing to review the denial of her claims. (R. 85-87).  On May 15, 2014, Administrative Law Judge ("ALJ") Jack Russak held a hearing. (R. 31-59).  ALJ Russak issued a written decision on July 7, 2014, finding that Plaintiff was not disabled from February 13, 2013 through July 7, 2014, and was thus not entitled to DIB or SSI during that time. (R. 13-30). Plaintiff requested review by the Appeals Council, which denied her request on November 10, 2015. (R. 1-9).  Thereafter, Plaintiff commenced an action in federal court, which was remanded by joint stipulation prior to any briefing on the merits on April 21, 2016. (R. 522-24); *see Paniagua v. Colvin*, 16-CV-313 (PKC) (S.D.N.Y. 2016) ("*Paniagua I*").

After ALJ Russak's July 2014 decision, but prior to the stipulated remand in *Paniagua I*, Plaintiff filed new applications for DIB and SSI, alleging a disability onset date of May 23, 2015. (R. 459, 529).  ALJ Kevin Kenneally conducted a hearing on December 1, 2017, where Plaintiff appeared represented by counsel. (R. 529).  By written decision, dated December 12, 2017, ALJ Kenneally found Plaintiff was disabled since May 23, 2015—the date that she turned 45—based on Medical-Vocational Rule 201.17. (R. 535).

After the parties' joint stipulation of remand in *Paniagua I*, the Appeals Council remanded Plaintiff's claim for reconsideration for the period from February 13, 2013 through May 23, 2015. (R. 478; 537-42).  Accordingly, on July 7, 2021, ALJ Kimberly Schiro held a

---

[2] Refers to the certified administrative record of proceedings relating to Plaintiff's application for social security benefits, filed in this action on May 2, 2022. (Docket No. 15).  All page number citations to the certified administrative record refer to the page number assigned by the Social Security Administration ("SSA").

hearing regarding Plaintiff's DIB and SSI claims for this period. (R. 474-95).  On August 4,

2021, ALJ Schiro issued a written decision finding Plaintiff not disabled from February 13, 2013

through May 23, 2015. (R. 458-73).

**A.  Medical Evidence Relating to Plaintiff's Physical Impairments[3]**

**1.  Medical Evidence After the Disability Onset Date**

**i.  Arthur Williams, M.D.**

On March 18, 2013, Plaintiff visited Dr. Arthur Williams, M.D., with complaints of

severe lower back pain that radiated down her anterior left leg to her foot, and paresthesia in her

left leg. (R. 443).  Plaintiff stated that she had these symptoms for approximately ten years, but

they had been getting worse. (*Id*.).  Plaintiff reported that physical therapy, weight loss and

gabapentin provided some relief from her pain. (*Id*.).  Dr. Williams diagnosed Plaintiff with

degeneration of lumbar or lumbosacral interverbral disc and recommended an MRI of the lumbar

spine. (*Id*.).

Following her MRI, Plaintiff had a follow-up appointment with Dr. Williams on April 22,

2013. (R. 441).  Plaintiff again complained of lower back pain and tingling in her legs from her

diabetes. (*Id*.).  Dr. Williams noted that Plaintiff was able to move all 4 extremities, that her

muscle strength was 5/5, and her sensation was intact. (*Id*.).  Dr. Williams indicated that an MRI

of Plaintiff's lumbar spine was taken, and he recommended continued physical therapy to treat

Plaintiff's degeneration of lumbar or lumbosacral interverbal disc. (*Id*.).

Plaintiff visited Dr. Williams again on May 20, 2013, complaining of worsening lower

back pain and pain and numbness in her feet. (R. 439-40).  Dr. Williams again assessed

---

[3] The Court notes that the certified administrative record in this case is nearly 2,000 pages. (*See* Docket No. 15).
The Court's summary of the record in this Opinion and Order, however, only includes the evidence relevant to the
claims at issue.

degeneration of the lumbar or lumbosacral intervertebral disc. (R. 439).  Dr. Williams noted that Plaintiff was able to move all 4 extremities, that her muscle strength was 5/5, and her sensation was intact. (*Id*.).  Dr. Williams referred Plaintiff to a pain management specialist for treatment. (R. 440).

On December 9, 2013, Plaintiff consulted with Dr. Williams regarding neurosurgery. (R. 435).  Plaintiff presented with severe lower back pain that radiated down the anterior of her left leg to her foot and paresthesia in her left leg. (*Id*.).  Plaintiff stated that she had received an injection from a pain management specialist, which helped "a lot" with the left leg pain. (*Id*.). Dr. Williams again referred Plaintiff to a pain management specialist for her lumbar spine. (R. 436).

## ii.  Physical Therapy, P.C.

On April 8, 2013, Plaintiff had an initial evaluation with a physical therapist. (R. 423). Plaintiff reported that she had intense dull aching pain in her lower back, difficulty standing and ambulating for long periods of time, limitations in her activities of daily living, and a decrease in sleep. (*Id*.).  Plaintiff rated her pain at a 9/10, and her manual muscle test score was a 3/5. (*Id*.). Mary Claire Arbilo, D.P.T., observed that Plaintiff had tenderness and muscle spasms in her lower back and recommended physical therapy three times a week. (*Id*.).  On October 17, 2013, Dr. Arbilo stated that Plaintiff's potential for recovery was good. (R. 424).

## iii.  MRI of Lumbar Spine

On April 8, 2013, an MRI was taken of Plaintiff's lumbar spine. (R. 403).  The image revealed: (1) a narrowing of the L4-5 disc with degenerative signal changes and cortical irregularity in the adjacent endplates; (2) similar, but less pronounced degenerative signal changes at L5-S1 and L3-4; (3) at L5-S1, a mild annular bulge with associated ossific ridge from

the inferior endplate of L5, a superimposed, broad-based central/left paracentral disc herniation, protrusion type, contributing to mild flattening of the left ventral thecal sac and facet arthropathy contributing to bilateral mild foraminal narrowing; (4) at L4-5, a mild disc bulge, with a superimposed, broad-based central/right paracentral disc herniation, protrusion type, ligamentum flavum thickening and facet arthropathy contributing to mild canal stenosis and narrowing of the right L5 lateral recess and facet arthropathy contributing to bilateral moderate foraminal narrowing; and (5) at L3-4, mild annular bulge, with superimposed, broad-based central disc herniation, protrusion type, ligamentum flavum thickening and facet arthropathy contributing to mild canal stenosis. (*Id.*).  The MRI did not reveal disc herniation, or canal or foraminal stenosis at the remaining lumbar levels. (*Id.*).  Additionally, the spine's alignment was normal in the sagittal plane, the vertebral bodies maintained normal height, and the spinal conus was normal in signal and morphology, terminating at T12-L1. (*Id.*).

### iv.  AW Medical Associates

#### a.  Stellos Trikounakis, P.A.

Plaintiff sought treatment from AW Medical Associates for various medical issues from May 21, 2013 through December 17, 2015. (R. 1469-530).  During her visit on May 21, 2013, Plaintiff presented with lower back pain, bilateral knee pain, and neck pain that was radiating down her left arm for two months, which worsened with rest. (R. 1526).  Plaintiff rated her pain a 4/10. (*Id.*).  Stellos Trikounakis, P.A., diagnosed Plaintiff with: (1) diabetes mellitus type 2; (2) hypertension; (3) obesity; (4) anemia; (5) cholesteremia; (6) back pain; (7) disc degeneration; and (8) neck disorder. (R. 1527).  For Plaintiff's neck pain, P.A. Trikounakis ordered an X-ray of the cervical spine. (R. 1528).

On July 9, 2013, Plaintiff again sought treatment from P.A. Trikounakis for pain in her lower back, knees and neck. (R. 1523). Plaintiff rated her pain a 4/10 and stated that it was worst at rest. (*Id*.). P.A. Trikounakis reported that Plaintiff's insurance would not pay for more physical therapy sessions, and observed that Plaintiff did not have swelling or redness in joints, limitation in motion or muscle weakness. (*Id*.).

During a follow-up visit on August 9, 2013, Plaintiff reported pain in her lower back, knees and neck, as well as left shoulder pain and insomnia. (R. 1520). On examination, Plaintiff again did not have swelling or redness in joints, limitation in motion or muscle weakness. (*Id*.). P.A. Trikounakis noted that an MRI of Plaintiff's left shoulder was negative for rotator cuff injury, and prescribed sleep medication for insomnia. (R. 1521; *see* R. 1566). Plaintiff's pain remained unchanged during a follow-up visit on September 9, 2013. (*See* R. 1517). During the September 9 visit, P.A. Trikounakis observed that an MRI of Plaintiff's cervical spine revealed loss of cervical lordosis possibly due to muscle spasm and bulging of C3-4, C4-5 and C5-6 discs, without evidence of herniation or intradural lesion. (R. 1518; *see* R. 1565). During her next visits, on October 21, 2013, and January 21, February 21, March 21, April 21, May 21 and June 20, 2014, Plaintiff had "no new compl[ai]nts." (R. 1495, 1498, 1502, 1505, 1508, 1511, 1514). However, during those visits, she rated her pain a 6/10. (*Id*.). On February 21, 2014, P.A. Trikounakis referred Plaintiff to physical therapy for her cervical spine. (R. 1509).

On September 12, 2014, Plaintiff complained that her left shoulder pain was improving with therapy, but she continued to have lower back pain and pain radiating down her left leg. (R. 1490). She also reported pelvic pain and weakness/pain on her left side. (*Id*.). Plaintiff's lower back and left leg pain was also noted at her pre-gastric bypass surgery visit on October 3, 2014. (R. 1486). Plaintiff underwent gastric bypass on October 7, 2014. (R. 1483).

-6-

During a follow-up visit on February 9, 2015, P.A. Trikounakis referred Plaintiff to physical therapy and an orthopedic surgeon for her lumbar disc degeneration and associated pain. (R. 1480-81).  On March 23, 2015, P.A. Trikounakis noted that Plaintiff was "having therapy" for her disc degeneration. (R. 1476).  On February 9, March 23, and September 9, 2015, P.A. Trikounakis observed a decreased range of motion in Plaintiff's lumbar spine. (R. 1475, 1477, 1481).  Plaintiff reported pain in her left elbow and lower leg during a December 17, 2015 appointment. (R. 1469).

**b.  Ramon Tallaj, M.D.**

On April 9, 2013, Dr. Ramon Tallaj, M.D., completed a disability report at the behest of the New York State Office of Temporary and Disability Assistance Division of Disability Determinations. (R. 405-11).  Dr. Tallaj stated that he had been treating Plaintiff since March 5, 2009, and had last examined her on December 10, 2012. (R. 405).  Dr. Tallaj's treating diagnoses were diabetes, hypertension, obesity, lumbar disc herniation, and back and knee pain. (*Id.*).  On the date of the report, Plaintiff presented with lower back pain, knee pain, dizziness and dyspnea on exertion. (*Id.*).  Dr. Tallaj reported that an MRI of the lumbar spine taken in November 2011 revealed multiple disc herniations, degeneration and bulging at L3/4 and L5/S1, one large herniation at L4/5, and extension toward right intervertebral foraminal and nerve root compression. (R. 406).  Dr. Tallaj noted a decreased range of motion in the lumbar spine, decreased muscle tone in the left leg and limping. (R. 406-08).  Dr. Tallaj opined that Plaintiff had the following physical limitations: (1) dyspnea on exertion when walking greater than one block due to obesity; (2) Plaintiff was limited to occasional lifting (up to 1/3 of workday) of no more than five pounds; (3) Plaintiff could stand and/or walk for no more than two hours a day; (4) Plaintiff could sit for no more than six hours a day; (5) Plaintiff had limited ability to push

and/or pull due to a herniated disc; (6) Plaintiff was limited in extreme cold, which increased her pain. (R. 408-09).  Dr. Tallaj noted that Plaintiff had physical therapy with "no relief of pain," and that her insurance no longer paid for physical therapy. (R. 409).

On May 7, 2013, Dr. Tallaj completed a Physician's Functional Assessment Form at the request of the City of New York Human Resources Administration. (R. 416).  Dr. Tallaj reiterated that Plaintiff had decreased range of motion in the lumbar spine, pain with flexing her knees, and the MRI showed herniation at L4-S1 with nerve impingement. (*Id*.).  Dr. Tallaj opined that Plaintiff was unable to work for at least twelve months. (R. 416-17).

In a Treating Physician's Wellness Plan Report, dated August 9, 2013, Dr. Tallaj diagnosed Plaintiff with unstable joint disorder, lumbar disc herniation, diabetes, hypertension and hyperlipidemia. (R. 420).  Dr. Tallaj's relevant clinical findings included decreased range of motion in the lumbar and cervical spine, pain with adduction, extension and flexion in the left shoulder, an MRI indicating a herniated disc and impingement, and an X-ray demonstrating cervical disc degeneration. (*Id*.).  On the basis of these findings, Dr. Tallaj opined that Plaintiff was unable to work for at least twelve months. (R. 421).

On October 21, 2013, Dr. Tallaj completed a Physician's Report of Disability Due to Physical Impairment. (R. 425-31).  Dr. Tallaj indicated in the report that he first treated Plaintiff in March 2009 and last treated her on the date of the report. (*Id*.).  Dr. Tallaj diagnosed Plaintiff with: (1) disc displacement of the cervical spine; (2) lumbar degeneration with stenosis; (3) hypertension; (4) diabetes; and (5) hyperlipidemia. (*Id*.).  Dr. Tallaj noted that Plaintiff had lower back pain rated at an 8/10, which radiated down the left leg, and cervical spine and neck pain, which radiated down the left arm. (R. 426).  Dr. Tallaj opined that Plaintiff was limited in the following ways: (1) Plaintiff had to lay down a half hour during the day; (2) Plaintiff could sit no

more than two hours in an eight-hour workday; (3) Plaintiff could stand no longer than one hour

in an eight-hour workday; (4) Plaintiff could walk for no more than one hour in an eight-hour

workday; (5) Plaintiff can occasionally lift/carry no more than ten pounds; (6) Plaintiff could

never bend, squat, climb, crawl or reach; (7) Plaintiff could only occasionally handle, finger, and

push/pull with the left arm. (R. 427-31). Dr. Tallaj also concluded that Plaintiff would have

difficulty taking the bus or subway alone to work on a daily basis. (R. 430).

In a Treating Physician's Wellness Plain Report, dated February 14, 2014, Dr. Tallaj

diagnosed Plaintiff with unstable disorder of joint based on an MRI of the lumbar spine

demonstrating disc degeneration with stenosis and an MRI of the cervical spine showing disc

displacement. (R. 444). Dr. Tallaj concluded that Plaintiff was unable to work for at least twelve

months, and noted that resolution of her condition was dependent on therapy. (R. 445).

**v. X-ray of Cervical Spine – Doshi Diagnostic Imaging Services**

On June 4, 2013, Dr. Mark Armstrong, M.D., took an X-ray of Plaintiff's cervical spine.

(R. 1568). The impression revealed degenerative disc disease at C4-C5 and C5-C6. (*Id.*).

Plaintiff's vertebrae were normal in height and there was no evidence of a compression fracture

or spondylolisthesis. (*Id.*).

**vi. St. Luke's Clinic—Dr. Jung Kim, M.D.**

On June 26, 2013, Plaintiff sought treatment from Dr. Jung Kim, M.D., for lower back

pain. (R. 437). Plaintiff complained of bilateral back pain that was constant and aching for many

years, and pain down the left leg while standing or walking. (*Id.*). Plaintiff described the pain as

"sharp and shooting," but her sensation and motor skills remained intact. (*Id.*). On examination,

Dr. Kim observed bilateral paraspinal tenderness. (*Id.*). Dr. Kim further observed that Plaintiff's

motor and sensory faculties remained intact, she had a normal gait and full range of motion, and

her straight leg raise test was negative. (*Id*.).  Dr. Kim opined that Plaintiff would benefit from a

transforaminal lumbar epidural steroid injection. (*Id*.).

Plaintiff followed up with Dr. Kim regarding back pain radiating into the lower left leg

on January 8, 2014. (R. 433).  On physical exam, Dr. Kim observed palpable spasm and

tenderness in the paraspinal muscles. (*Id*.).  Plaintiff also had a positive straight leg raise test on

the left side. (*Id*.).  Plaintiff had a normal: gait, strength bilaterally, range of motion and

sensation. (*Id*.).  Dr. Kim noted that the lumbar epidural steroid injection administered in 2013

had provided relief, and scheduled Plaintiff for another injection the following month. (*Id*.).

### vii.  Royal Footcare, P.C. – Dr. Gerard A. Leotaud

In a March 18, 2014 letter, Dr. Gerard A. Leotaud stated that Plaintiff has "painful

diabetic neuropathy, hammertoes and tinea pedis," and that her plantar fasciitis was resolved. (R.

446).  Plaintiff managed her conditions with oral medication and B12 injections. (*Id*.).

On August 26, 2014, Plaintiff sought treatment from Dr. Leotaud for painful burning and

tingling in both of her lower extremities, which, at times, became more intense at night. (R.

1606-07).  Plaintiff rated her pain a 6-7/10 and stated that her legs and feet got numb from time

to time. (R. 1607).  Dr. Leotaud noted that Plaintiff's muscle strength was 4/5 bilaterally in the

lower extremities. (R. 1608).  On physical examination, he observed: diminished sensation

bilaterally, tingling, a positive Tinel's sign bilaterally, positive intractable pain bilaterally, and

lower back pain with hip flexion and extension. (*Id*.).  Dr. Leotaud diagnosed Plaintiff with

diabetic neuropathy, paresthesia, neuralgia, hammer toe, tenosynovitis, degenerative joint

disease, xerosis and sinus tarsi syndrome. (*Id*.).  He administered topical pain medication,

ordered a foot and ankle X-ray and nerve conduction velocity testing, and discussed a care

management plan. (*See id*.).

**viii.  Electromyography ("EMG")—New Millennium Medical Imaging, P.C.**

On May 26, 2015, an electromyography ("EMG") was taken of Plaintiff's lower extremities. (R. 1549-50).  The EMG revealed bilateral peroneal motor nerve neuropathy and bilateral tibial motor nerve neuropathy; a possible right lumbosacral radiculopathy; and possible proximal plexopathy. (R. 1550).

**ix.  State Consultative Examiner – Dr. Marilee Mescon, M.D.**

On April 17, 2013, Plaintiff was evaluated by state consultative examiner Dr. Marilee Mescon, M.D. (R. 412).  Plaintiff's chief complaints were high blood pressure, diabetes and back pain. (*Id*.).  Plaintiff reported that her back pain began ten years ago following a work-related injury, and described the pain as a 7/10 with analgesic medications, to an 8/10 without medication. (*Id*.).  She stated that she had pain and tingling in both legs radiating down, but the pain was worse on her left side. (*Id*.).  The pain became worse when she bent forward. (*Id*.).  At that time, Plaintiff had not yet had any epidural injections. (*Id*.).  Plaintiff stated that she had high blood pressure since 2011, but had never been hospitalized for it. (*Id*.).  She also reported being diabetic since 2010, and had never been hospitalized due to her diabetes. (*Id*.).  Plaintiff reported that she was able to do daily activities, including cooking, shopping, showering, bathing, dressing and socializing; however, her daughter did the cleaning and laundry. (R. 413).

On physical examination, Plaintiff had a normal gait, was able to walk on her heels and toes without difficulty, could do a full squat, had a normal stance, used no assistive devices and was able to rise from a chair without difficulty. (*Id*.).  Her cervical spine demonstrated full flexion and extension, lateral flexion bilaterally and full rotary movement bilaterally. (R. 414).  Her flexion and extension of the lumbosacral spine was decreased. (*Id*.).  Plaintiff had full range

of motion in her shoulders, elbows, forearms, wrists, knees and ankles bilaterally. (*Id*.).  Her hand and finger dexterity were intact and she had 5/5 grip strength bilaterally. (R. 415).

Dr. Mescon opined that Plaintiff had no limitations in her ability to sit, stand, climb, push, pull or carry heavy objects. (*Id*.).

**x.  New York Eye and Ear Infirmary – Emily Su, M.D.**

Plaintiff sought treatment from Dr. Emily Su, M.D,. at the New York Eye and Ear Infirmary in 2013. (R. 1541-42).  Plaintiff was diagnosed with idiopathic intra-cranial hypertension. (*Id*.).

**B.  Nonmedical Evidence**

**1.  Plaintiff's Function Report**

On April 30, 2013, Plaintiff completed a function report. (R. 231-39).  Plaintiff stated that she lived in an apartment with her family, and that her daily schedule consisted of waking up, showering, taking her daughter to school, organizing things around the house, and picking her daughter up from school. (R. 231-32).  Since her injury, Plaintiff said that she had been unable to work, clean the house, exercise and walk long distances. (R. 232).  She also indicated that, as a result of her back pain, she was less active. (R. 235).  Plaintiff experienced difficulties with getting out of the bathtub, getting dressed, and bending down. (R. 232).  Plaintiff noted that she went shopping for food and household products for 30-40 minutes, and that she traveled by public transit. (R. 234-35).  Plaintiff reported that: (1) she was unable to lift anything heavy; (2) she could not stand for too long; (3) she could not walk too far before her back and legs began to hurt; (4) her back ached when she sat too long; (5) she could not climb stairs too much; (6) she had difficulty with squatting and kneeling because she had trouble getting back up; and (7) she felt like her hands were always numb. (R. 236-37).  Plaintiff did not have issues with reaching,

hearing and talking. (R. 237).  Additionally, Plaintiff stated that she was able to walk for about two to three blocks before needing to stop and rest for fifteen minutes. (R. 238).

## 2.  Plaintiff's Testimony

### i.  2021 Hearing

Plaintiff was represented by counsel at the July 7, 2021 telephonic hearing and testified via interpreter. (R. 477; 483).  Plaintiff testified that, from February 2013 through May 2015, she was not able to work because of herniated discs, lower back pain, arthritis, high blood pressure, and diabetes and related neuropathy. (R. 484).  Plaintiff denied that she had any mental problems preventing her from working during that time period. (*Id*.).  Plaintiff testified that Dr. Tallaj was not her primary care doctor during the relevant time period; rather, P.A. Trikounakis at AW Medical Associates, who worked under Dr. Tallaj, served as her primary care doctor for monthly appointments. (R. 484-85; *see also* R. 254).  Beginning in 2011, Plaintiff had MRIs done of her spine annually. (R. 485).  From February 2013 through May 2015, Plaintiff took medications for high blood pressure, diabetes, and pain management. (R. 485-86).  At first, the pain medication caused an upset stomach, but that eventually stopped. (R. 486).  During the relevant time period, Plaintiff had gastric bypass at St. Luke's. (*Id*.).  Plaintiff used a cane to walk, and could not sit for more than one hour or walk more than two to three blocks. (R. 486-87).  She reported difficulties with her hands during that time period, but no testing was done for carpal tunnel syndrome, "or other problems." (R. 487).

Plaintiff testified that she is left-hand dominant, and experienced difficulties with her left shoulder during the relevant time period. (R. 487).  She also had pain in her knees and back from herniated discs. (R. 488).  She experienced pain on a regular basis, and managed her pain with medicated patches and physical therapy thrice weekly. (R. 488-89).  Plaintiff testified that her

-13-

pain was a 10/10 and she was "useless" during the relevant period. (R. 489).  Moreover, she had

difficulty sleeping due to her discomfort. (R. 489).  Plaintiff's doctor told her that she could not

lift more than twenty pounds because of her injuries. (R. 488).  Plaintiff was able to do daily

activities, including cooking, cleaning, laundry and shopping, with her daughter's help. (*Id*.).

**ii.  2014 Hearing**

Plaintiff was represented by counsel at her May 15, 2014 hearing and testified via

interpreter. (R. 33).  During the 2014 hearing, Plaintiff testified that she took the bus and train to

the hearing alone. (R. 38).  Plaintiff stated that she was able to dress herself, but required help

tying her shoes, and did not experience difficulty getting in and out of the shower. (R. 38-39).  At

that time, she was going to physical therapy three days a week for her back, knee and arm. (R.

39).  Plaintiff traveled by bus to church once a week, read books, and did not finish high school

before coming to the United States. (R. 39-42).  Further, Plaintiff said that she cooked

sometimes, did laundry, grocery shopped and cleaned dishes, but her sister cleaned the

apartment. (R. 46).  Plaintiff also walked her daughter four blocks to the bus each morning. (R.

47).  Plaintiff reported that, because of her ailments, she needed to lie down during the day two

to three days a week for about thirty minutes. (R. 48-49).  Moreover, she had pain in her feet

when she walked or stood a lot due to her diabetes. (R. 49).

Plaintiff testified that her primary doctor was Dr. Tallaj, whom she had seen for "many

years," but P.A. Trikounakis primarily took care of her. (R. 42-43).  Plaintiff went to

appointments with P.A. Trikounakis every three months. (R. 43).  She also got treatment from

Dr. Williams for problems with her spinal column. (R. 43).  Plaintiff testified that she had pain in

her lower back and down her left leg, which radiated down her leg. (R. 44-45; 50-51).  She

experienced pain when she walked or sat for longer than thirty minutes, and had problems with

her left arm that prohibited her from lifting heavy things. (R. 45).  Plaintiff stated that she had

received an injection in her back and was scheduled to receive another, and she also received

injections in her feet. (R. 50).

## C.  The ALJ's Decision

ALJ Schiro first determined that Plaintiff met the insured status requirements of the

Social Security Act ("Act") through December 31, 2020. (R. 461).  Thereafter, ALJ Schiro

applied the five-step procedure established by the Commissioner for evaluating disability claims.

*See* 20 C.F.R. §§ 404.1520(a) and 416.920(a). (R. 461-66).  At step one, the ALJ found that

Plaintiff had not engaged in substantial gainful activity from February 13, 2013 through May 23,

2015. (R. 461).  At step two, the ALJ determined that, from February 13, 2013 through May 23,

2015, Plaintiff had severe impairments of diabetes mellitus; a back impairment, including

herniated discs at the L3/4 and L4/5 levels of the spine, accompanied by mild stenosis as

revealed on an MRI dated April 8, 2013; hypertension; a knee impairment; hammer toes; and

obesity. (R. 461-62).  At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the impairments

set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525,

404.1526, 416.920(d), 416.925 and 416.926). (R. 462).  ALJ Schiro noted that she had

"specifically closely considered the possible applicability of Sections 1.15 (defining and

describing '[d]isorders of the skeletal spine resulting in compromise of a nerve root'), 1.16

('[l]umbar spinal stenosis resulting in compromise of the cauda equina'), and 1.18 of the Listings

('[a]bnormality of a major joint in any extremity')." (*Id.*).

The ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in

20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she "could occasionally balance, kneel,

stoop, crouch, crawl and climb ramps and stairs" and "could not work around moving mechanical parts or at unprotected heights." (*Id.*).  The ALJ considered all of Plaintiff's symptoms and their consistency with the objective medical evidence and other evidence in arriving at the RFC, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p. (*Id.*).  The ALJ also considered the opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. (*Id.*).  Ultimately, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." (R. 465).

The ALJ assigned "some weight" to Dr. Tallaj's October 21, 2013 Physician's Report of Disability Due to Physical Impairment to the extent that it was, "overall, consistent with an opinion that the claimant was capable of performing sedentary work." (R. 464).  However, the ALJ assigned no weight to Dr. Tallaj's conclusion that Plaintiff was unable to sit for more than two hours in an eight-hour workday because it was unsupported by the record and inconsistent with Plaintiff's statements in her April 30, 2013 function report. (R. 464-65).  Moreover, the ALJ gave no weight to Dr. Tallaj's opinions dated May 7 and August 9, 2013, and February 14, 2014, as those reports opined on ultimate conclusions of disability that are specifically reserved to the Commissioner. (R. 463); *see* 20 C.F.R. §§ 404.1527(d), 416.927(d).  The ALJ did not "assign[] significant weight" to Dr. Mescon's ultimate conclusion that Plaintiff had no exertional limitations because it was inconsistent with the MRIs demonstrating that Plaintiff had "cervical and lumbar abnormalities that would be likely to cause some exertional limits." (R. 465).

At step four, the ALJ found that Plaintiff did not have any past relevant work. (*Id*.).  At step five, after considering Plaintiff's RFC, and Plaintiff's age, education and work experience, the ALJ concluded that she was not disabled under the Act because she could perform other work that existed in significant numbers in the national economy. (R. 466).

## II. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed and remanded for further administrative proceedings because: (1) the ALJ erred in not assigning controlling weight to Dr. Tallaj's October 2013 opinion that Plaintiff could not sit for more than two hours in an eight-hour workday—thus precluding an RFC for sedentary work, (Pl. Br. at 8-13); and (2) the ALJ improperly evaluated Plaintiff's subjective statements regarding her ability to perform daily activities, (Pl. Br. at 14-17).  The Commissioner argues that: (1) the ALJ's decision was supported by substantial evidence, (Comm'r Br. at 11-13); (2) the ALJ properly assigned some, but not controlling, weight to Dr. Tallaj's opinions, (Comm'r Br. at 13-20); and (3) the ALJ properly weighed Plaintiff's statements regarding her daily activities and other subjective statements in determining her credibility, (Comm'r Br. at 21-23).

## A. Legal Standards

A claimant is disabled if he or she "is unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (per curiam) (quoting 42 U.S.C. § 423(d)(1)(A)).  The SSA has enacted a five-step sequential analysis to determine if a claimant is eligible for benefits based on a disability:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of

-17-

impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  The claimant has the general burden of proving that he or she is statutorily disabled "and bears the burden of proving his or her case at steps one through four." *Cichocki*, 729 F.3d at 176 (quoting *Burgess*, 537 F.3d at 128).  At step five, the burden then shifts "to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

When reviewing an appeal from a denial of SSI or disability benefits, the Court's review is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see also* 42 U.S.C. § 405(g).  Substantial evidence means "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Put another way, a conclusion must be buttressed by "more than a mere scintilla" of record evidence. *Id*. (quoting *Consolidated Edison*, 305 U.S. at 229).  The substantial evidence standard is "very deferential" to the ALJ. *Brault*, 683 F.3d at 448.  The Court does not substitute its judgment for the agency's "or 'determine *de novo* whether [the claimant] is disabled.'" *Cage v. Comm'r of*

*Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (alteration in original) (quoting *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998)).

However, where the proper legal standards have not been applied and "might have affected the disposition of the case, [the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Therefore, "[f]ailure to apply the correct legal standards is grounds for reversal." *Id.*

## B. The ALJ's Duty to Develop the Record

Initially, the Court must be satisfied that the record is fully developed before determining whether the Commissioner's decision is supported by substantial evidence. *See Smoker v. Saul*, 19-CV-1539 (AT) (JLC), 2020 WL 2212404, at *9 (S.D.N.Y. May 7, 2020) ("Whether the ALJ has satisfied this duty to develop the record is a threshold question."). "[I]n light of the 'essentially non-adversarial nature of a benefits proceeding[,]'" "[a]n ALJ, unlike a judge at trial, has an affirmative duty to develop the record." *Vega v. Astrue*, No. 08-CV-1525 (LAP) (GWG), 2010 WL 2365851, at *2 (S.D.N.Y. June 10, 2010) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). "This duty is present even when a claimant is represented by counsel." *Atkinson v. Barnhart*, 87 F. App'x 766, 768 (2d Cir. 2004) (summary order). "Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence" is appropriate. *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing *Perez v.*

*Chater*, 77 F.3d 41, 48 (2d. Cir. 1996)); *see also Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order).

Here, the Court finds that there are no obvious gaps in the record.  The record consists of voluminous medical records, (R. 403-11, 416-18, 420-22, 425-31, 444-45, 1565-66, 1568); treatment records, (R. 1469-643, 432-43, 446-51); outpatient physical therapy records, (R. 423-24); Plaintiff's function report, (R. 231-39); medical opinions from consultative examiners, (R. 412-15); and Plaintiff's testimony, (R. 33-51, 477-89).  Moreover, at the hearing, Plaintiff's counsel did not have any objections to the evidence. (R. 478). *See David B. C. v. Comm'r of Soc. Sec.*, 20-CV-01136 (FJS/TWD), 2021 WL 5769567, at *7 (N.D.N.Y. Dec. 6, 2021) (ALJ fulfilled duty to develop the record where "Plaintiff did not object to the contents of the record or identify any gaps that need to be filled.").  Accordingly, the Court concludes that the ALJ fulfilled her duty to develop the record.

## C.  Plaintiff's Arguments Regarding the RFC Determination

The RFC is an "individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)) (internal quotations omitted).  The RFC determination is reserved to the Commissioner. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (summary order); *see* 20 C.F.R. § 404.1527(d)(2). When determining the RFC, the ALJ considers "a claimant's physical abilities, mental abilities, [and] symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Weather v. Astrue*, 32 F. Supp. 3d 363, 376 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1545(a)). "[T]he RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific

medical facts, and non-medical evidence." *Glessing v. Comm'r of Soc. Sec.*, No. 13-CV-1254 (BMC), 2014 WL 1599944, at \*8 (E.D.N.Y. Apr. 21, 2014) (quoting *Wichelns v. Comm'r of Soc. Sec.*, No. 12-CV-1595 (NAM/ATB), 2014 WL 1311564, at \*6 (N.D.N.Y. Mar. 31, 2014)) (internal quotations omitted).  Nevertheless, ALJs are not medical professionals. *See Heather R. v. Comm'r of Soc. Sec.*, 19-CV-01555 (EAW), 2021 WL 671601, at \*3 (W.D.N.Y. Feb. 22, 2021).  The ALJ must refrain "from 'playing doctor' in the sense that [he] 'may not substitute his own judgment for competent medical opinion.'" *Quinto v. Berryhill*, No. 17-CV-00024 (JCH), 2017 WL 6017931, at \*12 (D. Conn. Dec. 1, 2017) (quoting *Staggers v. Colvin*, No. 14-CV-00717 (SALM), 2015 WL 4751108, at \*3 (D. Conn. June 17, 2015), *report and recommendation adopted*, 2015 WL 4751123 (D. Conn. Aug. 11, 2015)).  Accordingly, unless the claimant has more than "minor physical impairments," *Jaeger-Feathers v. Berryhill*, 17-CV-06350 (JJM), 2019 WL 666949, at \*4 (W.D.N.Y. Feb. 19, 2019), an ALJ is not qualified "to assess residual functional capacity on the basis of bare medical findings," *Kinslow v. Colvin*, No. 12-CV-1541 (GLS/ESH), 2014 WL 788793, at \*5 (N.D.N.Y. Feb. 24, 2014).  Very specific RFC assessments, such as limitations on off-task time, must be based on evidence in the record, rather than on "the ALJ's own surmise." *See Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order).

## 1.  The Treating Physician Rule[4]

Plaintiff argues that the ALJ erred in: (1) not assigning "controlling weight" to Dr. Tallaj's opinion that she could not sit for more than two hours in an eight-hour workday; and (2) failing to explicitly consider the factors set forth in the governing SSA regulations. (Pl. Br. at 8-

---

[4] Despite recent changes in the regulations, the treating physician rule applies to claims filed before March 27, 2017. *Quiles v. Saul*, 19-CV-11181 (KNF), 2021 WL 848197, at \*9 (S.D.N.Y. Mar. 5, 2021) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). Plaintiff filed her claims on February 26, 2013, (R. 192-205; 60, 67-68), so the treating physician rule applies here.

13).  The Commissioner counters that the ALJ reasonably declined to give controlling weight to Dr. Tallaj's opinions after considering all relevant factors. (Comm'r Br. at 13-19).  As explained below, the Court finds that the ALJ committed procedural error in neglecting to explicitly analyze the relevant factors, and also failed to set forth good reasons for declining to assign controlling weight to Dr. Tallaj's opinions.  The Court, therefore, remands for further proceedings on this ground.

**i.  The ALJ Failed to Explicitly Analyze the *Burgess* Factors**

In determining whether a claimant is disabled, an ALJ must give the medical opinion of a treating physician "controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa*, 168 F.3d at 78-79.  This is because the treating physician is in a better position to provide a detailed picture of a claimant's impairments than consultative physicians who may see the claimant on just one occasion or not at all. *See Estela-Rivera v. Colvin*, No. 13-CV-5060 (PKC), 2015 WL 5008250, at *13 (E.D.N.Y. Aug. 20, 2015) (citing 20 C.F.R. § 404.1527(d)(2)).  However, an ALJ may properly disregard the opinion of a treating physician where the opinion is contradicted by the weight of other record evidence, *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999), or if it is internally inconsistent or otherwise uninformative, *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). *See Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022) ("The opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with (or contradicted by) other substantial evidence in the claimant's case record.").

Where the ALJ affords limited weight to the treating source's opinion and more weight to a non-treating source's opinion, he must provide "good reasons" for doing so. *Schaal*, 134 F.3d

at 505; *see also* 20 C.F.R. § 404.1527(c)(2).  In addition, the ALJ must follow "specific

procedures ... in determining the appropriate weight to assign a treating physician's opinion."

*Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  The ALJ must "'explicitly consider' the

following, nonexclusive '*Burgess* factors': '(1) the frequen[cy], length, nature, and extent of

treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the

opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id*.

at 95-96 (quoting *Selian*, 708 F.3d at 418) (citing *Burgess*, 537 F.3d at 129).  "An ALJ's failure to

'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error."

*Id*. at 96.  Where an ALJ procedurally errs, "the question becomes whether 'a searching review

of the record ... assure[s] [the court] ... that the substance of the [treating physician] rule was not

traversed.'" *Id*. (quoting *Halloran*, 362 F.3d at 32) (internal quotations omitted).  Remand is

appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a

treating physician[']s opinion." *Halloran*, 362 F.3d at 33.

The ALJ identified Dr. Tallaj as a treating physician, and the parties do not dispute the

propriety of this determination. (*See* R. 464).  Dr. Tallaj indicated that he had seen Plaintiff on

multiple occasions beginning in March of 2009, (*see* R. 405), and the record before this Court

includes at least five evaluative reports that he prepared during the time period at issue. (*See* R.

405-11, 416-17, 420-21, 425-31, 444-45).  The Court is therefore satisfied that Dr. Tallaj is a

treating physician, and will apply the treating physician rule. *See, e.g., Snell*, 177 F.3d at 133

(finding doctors to be treating physicians where they had each "seen [the plaintiff] on multiple

occasions."); *Cora v. Colvin*, 15-CV-1549 (AJN), 2016 WL 4581343, at *3 (S.D.N.Y. Sept. 1,

2016) (applying treating physician rule where "[t]he ALJ identified [the physician] as [the plaintiff's] treating physician, and the parties d[id] not dispute this.").

To begin, the ALJ afforded no weight to Dr. Tallaj's opinions dated May 7, 2013, August 9, 2013 and February 14, 2014. (R. 463). In each of those opinions, Dr. Tallaj concluded that Plaintiff was unable to work for at least twelve months, and thus opined on issues reserved to the Commissioner under governing authority. (R. 416-17, 421, 445); *see* 20 C.F.R. §§ 404.1520b(c), 416.920b(c). Plaintiff does not dispute the weight the ALJ assigned to these decisions. (*See* Pl. Br. at 9, citing to R. 464). Seeing no basis to disturb this conclusion, the Court now examines how the ALJ weighed Dr. Tallaj's April 9, 2013 and October 21, 2013 opinions.

In the April 9, 2013 opinion, Dr. Tallaj opined that Plaintiff was limited to occasionally lifting up to five pounds and could sit for less than six hours a day, and was limited in her ability to push and/or pull because of herniated discs. (R. 408-09). He based this conclusion on an MRI which revealed "multiple disc degeneration and bulging," "large herniation," and "nerve root compression," and noted that Plaintiff had complained of lower back pain, pain radiating down her right leg, bilateral knee pain, and decreased range of motion in the lumbar spine. (*See* R. 406). Dr. Tallaj noted that he had been treating Plaintiff since March 5, 2009, at a frequency of approximately every two months, and had last examined her on December 10, 2012. (R. 405).

In the October 21, 2013 opinion, Dr. Tallaj opined that Plaintiff could not sit for longer than two hours, in 30 minute increments. (R. 428). He indicated that he had last examined Plaintiff on October 21, 2013, and that she had complained of lower back pain radiating down her left leg, with an 8/10 intensity. (R. 425-26). He based his conclusions on an MRI of the cervical spine indicating disc displacement and an MRI of the lumbar spine demonstrating disc

degeneration and stenosis—and noted that the disc disease and stenosis cause neuropathic pain. (*Id*.).

ALJ Schiro did not assign "significant weight" to the April 2013 opinion because "[p]hysical examinations conducted throughout 2013 did not confirm the existence of such extreme limitations," and it "seem[ed] to have been too heavily weighted on the technical results of the MRI performed the day before." (R. 464).  The ALJ gave "some weight" to the October 21, 2013 opinion to the extent that it was consistent with an opinion that Plaintiff retained the RFC to perform sedentary work. (*Id*.).  ALJ Schiro declined to give any weight to Dr. Tallaj's opinion that Plaintiff could not sit for longer than two hours in an eight-hour workday "because it [wa]s not borne out by any other evidence in the record and appear[ed] to have been contradicted by the claimant's own description of her activities of her daily life" in her April 2013 function report. (R. 464-65).

Here, the ALJ failed to properly apply the treating physician rule when she accorded less than controlling weight to Dr. Tallaj's opinions.  "In according less than controlling weight to the opinions of [Plaintiff's] treating physicians, the ALJ was required to explicitly consider the *Burgess* factors or otherwise provide 'good reasons' for his weight determination." *Molina v. Kijakazi*, 21-CV-3869 (JLC), 2022 WL 16946823, at *10 (S.D.N.Y. Nov. 15, 2022) (citing *Estrella*, 925 F.3d at 95).  As set forth below, the ALJ did not explicitly consider the *Burgess* factors in making her determination.  An ALJ "must *explicitly* apply the [*Burgess*] factors … [and] the failure to do so is procedural error." *Schillo*, 31 F.4th at 75.

First, while the ALJ cited to the reports authored by Dr. Tallaj spanning from April 2013 through February 2014, she made no mention of the length of the treatment relationship and the nature and extent of the relationship—notwithstanding the fact that Dr. Tallaj noted he first

examined Plaintiff in 2009, and he saw her approximately every two months. (*See* R. 463-65; R. 405); *see* 20 C.F.R. § 404.1527(c)(2)(i).  Moreover, the ALJ's only acknowledgment of the frequency of treatment was to emphasize that, in the April 2013 report, Dr. Tallaj indicated that he had last examined Plaintiff in December 2012. (*See* R. 464).  However, "merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment'… particularly… where, as here, the relationship[] involved dozens of appointments over … years." *Ferraro v. Saul*, 806 F. App'x 13, 15 (2d Cir. 2020) (summary order); *see also Molina*, 2022 WL 16946823, at *12 (finding "brief acknowledgement" of treatment relationship insufficient where "the treatment relationship involved numerous appointments over several years"); *Mongelli v. Comm'r of Soc. Sec. Admin.*, 20-CV-8340 (ALC), 2022 WL 1094765, at *8 (S.D.N.Y. Apr. 12, 2022) (ALJ committed error where he failed to explicitly consider that the treating physician had treated Plaintiff for multiple years).

Second, the ALJ failed to analyze the amount of medical evidence supporting the opinions.  The Court first notes that, in declining to afford "significant weight" to the April 2013 opinion, the ALJ noted that it "seem[ed] to have been too heavily weighted on the technical results of the MRI performed the day before." (R. 464).  However, the ALJ's conclusion is predicated on a factual error—as Dr. Tallaj indicated that his conclusions were based on an "11/29/11 MRI [of the] lumbar spine." (R. 406).  Upon careful review of the record, the Court found an MRI dated November 29, 2011, the results of which are consistent with Dr. Tallaj's description of Plaintiff's MRI results in this report. (*Compare* R. 368-69 *with* R. 406).  Therefore, to the extent that the ALJ assumed that Dr. Tallaj was referring to the April 2013 MRI when he referenced the November 2011 MRI, such an assumption is not supported by the record.

Nor does the ALJ explain the basis for that assumption.  Even putting aside this mistake of fact, the ALJ made no mention of the other clinical findings underpinning Dr. Tallaj's report— including a positive straight leg raise test on the right and decreased range of motion in the lumbar spine, and observations regarding Plaintiff's pain. (R. 406-07).  Accordingly, the ALJ failed to explicitly consider the evidence supporting Dr. Tallaj's opinions. *Cf. Lugo v. Berryhill*, 18-CV-2179 (JGK) (RWL), 2019 WL 4418649, at *14 (S.D.N.Y. May 8, 2019), *report and recommendation adopted*, 390 F. Supp. 3d 453 (S.D.N.Y. 2019) (proper application of treating physician rule where ALJ evaluated "the type of and amount of evidence underlying" the notes, including "specifically outlin[ing] the clinical examination findings").

Third, the ALJ failed to explicitly analyze the consistency of the opinion with the remaining medical evidence in the record.  The ALJ noted that "[p]hysical examinations conducted throughout 2013 did not confirm the existence of such extreme limitations." (R. 464). The ALJ did not provide any citation to what physical examinations over the course of a one-year period she believed contradicted Dr. Tallaj's opinion. (*See id.*).  Courts have found similarly "cursory acknowledgement[s]" about the extent to which an opinion "is consistent with the record" fail to satisfy the ALJ's duty to explicitly consider the consistency of the opinion with the medical record. *See Williams v. Saul*, 19-CV-10443 (AT) (JLC), 2020 WL 6385821, at *13 (S.D.N.Y. Oct. 30, 2020), *report and recommendation adopted sub nom.*, *Williams v. Comm'r of Soc. Sec.*, 2020 WL 7337864 (S.D.N.Y. Dec. 14, 2020) ("Courts in this District have found that an ALJ's failure to consider the consistency of the physicians' opinions with each other, as here, constitutes legal error."); *see also Lopez v. Astrue*, No. 09-CV-1678 (CBA), 2011 WL 6000550, at *9 (E.D.N.Y. Nov. 28, 2011) (error where the ALJ "gave no consideration" of corroborative

findings from another physician); *Nieves v. Acting Comm'r of Soc. Sec.*, 20-CV-4179 (JLC), 2022 WL 949797, at *14 (S.D.N.Y. Mar. 30, 2022) (same).[5]

Accordingly, the ALJ committed procedural error in failing to consider the *Burgess* factors.

## ii. The ALJ Did Not Supply "Good Reasons" For Assigning Limited Weight to Dr. Tallaj's Opinions

Having found that the ALJ failed to explicitly analyze the *Burgess* factors, the Court must next consider whether the ALJ otherwise supplied "good reasons" for assigning limited weight to Dr. Tallaj's opinions. *Estrella*, 925 F.3d at 95. "'Good reasons' assure a reviewing court that the 'substance of the treating physician rule was not traversed.'" *Molina*, 2022 WL 16946823, at *10 (quoting *Estrella*, 925 F.3d at 96).

Here, the ALJ discounted Dr. Tallaj's conclusions that Plaintiff was unable to sit for long periods of time because those limitations were not "borne out" by other medical records. But "it is improper for an ALJ to discount a treating physician's opinion based on an absence or

---

[5] Moreover, the Court notes that the ALJ did not explicitly mention *any* of the treating notes from P.A. Trikounakis, who treated Plaintiff approximately monthly during the relevant time period. (*See* R. 1469-530; *see* R. 484-85). For claims filed before March 27, 2017, the governing regulations did not list the medical opinions of physician assistants as "acceptable medical sources" that must be assessed by the ALJ in evaluating the RFC. *Leonard W. v. Saul*, No. 18-CV-00993 (DNH/CFH), 2020 WL 896904, at *4 (N.D.N.Y. Feb. 25, 2020), *report and recommendation adopted*, 2020 WL 1169400 (N.D.N.Y. Mar. 11, 2020) (discussing history of regulations). However, the regulations allowed the ALJ to use evidence from "other sources" to show the severity of impairments and how the impairments impacted the claimant's ability to do work. *Id.* A 2006 Ruling from the SSA explained that opinions from physician assistants, "who [we]re not technically deemed 'acceptable medical sources' under [SSA] rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-3p, 2006 WL 2329939, at *3 (Aug. 9, 2006). Courts interpreted this ruling to "'prohibit ... per se rejection' of a PA's opinion on the sole basis that a PA is not an 'acceptable medical source.'" *Leonard W.*, 2020 WL 896904, at *5 (quoting *Logan v. Colvin*, 12-CV-01058 (WGY), 2016 WL 1039926, at *5 (N.D.N.Y. Mar. 14, 2016)). P.A. Trikounakis's notes indicate that, during Plaintiff's monthly visits, Plaintiff consistently complained of lower back, knee, pelvic and neck pain which radiated down her legs. (*See* R. 1469-530). He diagnosed Plaintiff with back pain; disc degeneration; and neck disorder, (*see, e.g.*, R. 1527), and, during some of those visits, observed a decreased range of motion in Plaintiff's lumbar spine, (R. 1475, 1477, 1481). These clinical findings may provide some support, or be consistent with, a need for sitting limitations, and thus corroborate Dr. Tallaj's conclusion. Despite confirming with Plaintiff during her hearing that P.A. Trikounakis, who "worked under Dr. Tallaj" at AW Medical Associates, served as her "primary doctor" during the relevant time period, (*see* R. 484-85), the ALJ does not discuss these treatment records. On remand, they should be considered.

omission of symptoms or evidence." *Molina*, 2022 WL 16946823, at \*10; *see Rosa*, 168 F.3d at 79 (ALJ erred in "attaching…significance to th[e] omission" of specific medical findings elsewhere in records).  The ALJ indicates that other, unspecified physical examinations throughout the relevant time period do not ascribe similar limitations as to sitting. (R. 464-65). In other words, the ALJ rejected Dr. Tallaj's opinion because other treating providers were silent as to sitting limitations.  Such a conclusion is impermissible under governing law, and, therefore, does not constitute "good reasons" for assigning limited weight. *See Rosa*, 168 F.3d at 81 ("This Court has refused to uphold an ALJ's decision to reject a treating physician's diagnosis merely on the basis that other examining doctors reported no similar findings."); *Beam v. Colvin*, No. 14-CV-9889 (KBF), 2015 WL 4660936, at \*7 (S.D.N.Y. Aug. 6, 2015) ("The ALJ cannot reject Dr. Shtock's opinion that plaintiff could not sit for more than four hours per day and rely on other doctors' silence as support for a finding that plaintiff is capable of sitting for six."); *Molina*, 2022 WL 16946823, at \*10 (finding ALJ improperly discounted treating physician's opinion that the plaintiff "was limited in her ability to sit for extended periods of time because he found the opinions were 'not supported by objective findings of medical record'" and impermissibly "interpret[ed] an absence of specific symptoms, namely gait abnormalities and extremity sensation/strength deficits, as inconsistent with the treating physicians' opinions of Molina's ability to sit"); *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 425 (S.D.N.Y. 2010) (ALJ erred where he "merely speculated that the absence of any reference to sitting meant that plaintiff had no problem in that regard, rather than obtaining explicit findings from the treating doctors").[6]

   The ALJ also assigned no weight to Dr. Tallaj's October 2013 opinion that Plaintiff was unable to sit for more than two hours because it was "contradicted by [Plaintiff's] own

---

[6] Moreover, to the extent that the ALJ was interpreting the finding of "mild stenosis" on the April 2013 MRI to be a "mild" condition that allowed Plaintiff to continue to have the functional capacity to sit consistent with the demands

description of her activities of daily living" in her April 2013 function report, which indicated an ability to perform sedentary work.[7] (R. 465).[8]  Specifically, the ALJ noted that Plaintiff's function report indicated that she "traveled by foot or us[ed] transportation," "took her daughter to school," "read every day," and "performed some shopping," but that she could not lift heavy weights or stand for too long. (R. 464).  The Second Circuit has cautioned that "[w]hen a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits *unless his conduct truly showed that he is capable of working*." *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989) (emphasis added).  With this framework in mind, courts have declined to find that a plaintiff's testimony that she could sometimes perform everyday activities, such as shopping, attend social gatherings, watching television, and using public transit meant that they "engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 643 (2d Cir.1983)).  Here, the ALJ "simply listed the daily activities [Plaintiff] engaged in but failed to explain how such activities demonstrated that [Plaintiff] was capable of performing sedentary work during the relevant time period." *Molina*, 2022 WL 16946823, at

---

of sedentary occupations, such interpretation of raw medical evidence is patently improper. *See, e.g., Wagner v. Saul*, 18-CV-195 (CJS), 2019 WL 3955421, at *4 (W.D.N.Y. Aug. 22, 2019) ("Here, it is plain that the ALJ interpreted the raw medical evidence to ascertain the effect of Plaintiff's severe impairment on his ability to sit, stand, lift, carry, push, pull, etc. The Court is especially troubled by the ALJ's interpretation of the MRI report.").

[7] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools," and "a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).  "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id*.  The SSA has explained that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday" for sedentary occupations. SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).

[8] Plaintiff incorrectly argues that the ALJ rejected Dr. Tallaj's opinion "solely" on the basis of her descriptions of her daily activities. (Pl. Br. at 9).  This argument is contradicted by the ALJ's decision—which clearly provides other reasons for rejecting the opinions.  The Court has carefully considered all reasons provided by the ALJ for assigning limited to no weight to Dr. Tallaj's opinions.

*11.  The Court finds that this "justification is insufficient to discount the treating physician's opinions regarding [Plaintiff's] limitations." *Id*.

In sum, the ALJ committed procedural error in failing to explicitly apply the *Burgess* factors.  After a "searching review of the record," *see Estrella*, 925 F.3d at 96, the Court concludes that the ALJ otherwise failed to provide "good reasons" for assigning limited to no weight to Dr. Tallaj's opinions, and, therefore, the error was not harmless. *See Schillo*, 31 F.4th at 75; *see also Molina,* 2022 WL 16946823, at *15 (error not harmless where, if treating physician's opinions regarding sitting limitations credited, ALJ may have arrived at different RFC determination).  A remand for further proceedings is therefore appropriate.  On remand, should the ALJ elect to assign less than controlling weight to Dr. Tallaj's opinions, the ALJ must explicitly apply the *Burgess* factors, as set forth in 20 C.F.R. § 404.1527.

**D.  Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred in concluding that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms was "not entirely consistent with the medical evidence and other evidence." (Pl. Br. at 15; R. 465).  Specifically, Plaintiff states that the ALJ improperly focused on Plaintiff's statements in the April 2013 function report, and did not assess the factors enumerated in governing regulations. (Pl. Br. at 15).  The Commissioner maintains that the ALJ considered more than Plaintiff's reported activities in the April 2013 function report, and properly rejected Plaintiff's subjective allegations in light of inconsistent evidence of daily functional ability. (Comm'r Br. at 21-23).

"It is the function of the Commissioner ... to appraise the credibility of witnesses, including the claimant ... [A]n ALJ is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's

testimony in light of the other evidence in the record." *Martes v. Comm'r of Soc. Sec.*, 344 F.

Supp. 3d 750, 762-63 (S.D.N.Y. 2018) (internal citations omitted).  The regulations state that the

Commissioner will "consider all of the available evidence, including [the claimant's] medical

history, the medical signs and laboratory findings, and statements about how [his or her]

symptoms affect [him or her]." 20 C.F.R. § 404.1529(a).  However, the Commissioner "will not

reject [a claimant's] statements about the intensity and persistence of [his or her] pain or other

symptoms or about the effect [his or her] symptoms have on [his or her] ability to work solely

because the available objective medical evidence does not substantiate [his or her] statements."

20 C.F.R. § 404.1529(c)(2).  Furthermore, "an ALJ is not required to explicitly address each and

every statement made in the record that might implicate his evaluation of the claimant's

credibility as long as the evidence of record permits the court to glean the rationale of an ALJ's

decision." *Morales v. Berryhill*, 484 F. Supp. 3d 130, 151 (S.D.N.Y. 2020) (quoting *Colbert v.

Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 580 (S.D.N.Y. 2019)).

> The factors that an ALJ should consider in evaluating the claimant's credibility are:
> (1) the claimant's daily activities; (2) the location, duration, frequency, and
> intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type,
> dosage, effectiveness, and side effects of any medications taken to alleviate the
> symptoms; (5) any treatment, other than medication, that the claimant has received
> for relief of the symptoms; (6) any other measures that the claimant employs to
> relieve the symptoms; and (7) other factors concerning the claimant's functional
> limitations and restrictions as a result of the symptoms.

*Hamm v. Colvin*, 16-CV-936 (DF), 2017 WL 1322203, at \*18 (S.D.N.Y. Mar. 29, 2017) (citing

20 C.F.R. § 404.1529(c)(3)(i)-(vii)); SSR 96-7p, 1996 WL 374186, at \*3 (S.S.A. July 2, 1996).[9]

Here, the ALJ determined that Plaintiff's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning

the intensity, persistence and limiting effects of these symptoms are not entirely consistent with

---

[9] Effective March 16, 2016, SSR 16-3p, 2016 WL 1119029 (S.S.A. 2016), superseded SSR 96-7p.

the medical evidence and other evidence in the record for the reasons explained in this decision."
(R. 465).  The ALJ cited to: (1) statements made regarding pain during treatment; (2) Plaintiff's
testimony at the 2021 hearing that her physicians allowed her to lift and carry up to 20 pounds;
(3) statements regarding the effectiveness of medications during medical treatment; (4)
statements made regarding Plaintiff's pain during medical appointments; and (5) Plaintiff's
statements in her 2013 function report. (R. 463-64).  Thus, Plaintiff's argument that the ALJ
*solely* considered statements regarding daily living from Plaintiff's 2013 function report is
incorrect.  The ALJ properly considered Plaintiff's activities of daily living, among other factors,
in making her credibility determination. *See Ayala v. Berryhill*, 18-CV-124 (VB) (LMS), 2019
WL 1427398, at *14 (S.D.N.Y. Mar. 12, 2019), *report and recommendation adopted sub nom.,*
*Ayala v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1417220 (S.D.N.Y. Mar. 29, 2019) ("Although
Plaintiff claims that the ALJ 'placed undue emphasis' on his activities of daily living, the
regulations provide for consideration of a claimant's activities of daily living, 20 C.F.R. §§
404.1529(c)(3)(i), 416.929(c)(3)(i), and '[a]n ALJ is entitled to take a plaintiff's activities of
daily living into account in making a credibility determination.'") (quoting *Andrews v. Berryhill*,
17-CV-6368 (MAT), 2018 WL 2088064, at *6 (W.D.N.Y. May 4, 2018)).

Next, Plaintiff claims that the ALJ's credibility determination was flawed because she did
not explicitly analyze all seven factors set forth in the SSA regulations. (Pl. Br. at 15).  The
Commissioner concedes that the ALJ did not expressly review every regulatory factor, (Comm'r
Br. at 23), and, upon review of the decision, the Court agrees.  However, "[w]hile it is 'not
sufficient for the [ALJ] to make a single, conclusory statement that' the claimant is not credible
or simply to recite the relevant factors…remand is not required where 'the evidence of record
permits [the court] to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76

(quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983)).  Accordingly, "[a]s long as the ALJ provides specific reasons for his credibility determination and sufficiently evaluates the claimant's symptoms, courts routinely decline to remand simply because the ALJ failed to overtly discuss all seven factors." *Rodriguez v. Kijakazi*, 21-CV-2358 (JCM), 2022 WL 3211684, at *19 (S.D.N.Y. Aug. 9, 2022) (quotations omitted).  The Court, therefore, must consider whether the evidence cited permits the Court to discern the rationale of the ALJ's decision.

Here, the ALJ stated that, in Plaintiff's function report:

the claimant indicated that she traveled by foot or using transportation, took her daughter to school, read every day and performed some shopping, but opined that she couldn't lift heavy weights or stand for too long (Exhibit 4E), all of which is consistent with an ability to perform sedentary exertion.

(R. 464).  The ALJ properly considered Plaintiff's statements in the function report regarding her daily activities, including the ability to walk, use public transit, take her daughter to school and shop, (*see* R. 464), despite Plaintiff's testimony that her pain was a 10/10 and she was "useless" during the relevant period. (R. 489). "[A]ctivities of daily living may constitute a basis for finding a claimant's testimony incredible," and are thus properly considered by the ALJ. *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 201 (S.D.N.Y. 2018) (citing *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009)); *Rivers v. Kijakazi,* 21-CV-820 (JCM), 2022 WL 2901578, at *21 (S.D.N.Y. July 22, 2022) (ALJ properly "considered a plethora of daily living activities that Plaintiff admitted to doing").

Moreover, in her decision, the ALJ also considered Plaintiff's statements in the treatment records regarding her pain, her response to medications, the medical findings regarding her impairments in diagnostic tests and clinical examinations, and her testimony regarding her ability to lift and carry up to 20 pounds. (R. 463-65).  Specifically, the ALJ noted that: (i) during

treatment with a pain specialist in 2013 and 2014, Plaintiff reported back and shoulder pain, and MRIs revealed herniations but physical exam confirmed "normal sensory and motor functioning," (R. 463-64); (ii) treatment notes indicated that "medications had been effective," (R. 464); (iii) Plaintiff "began experiencing pain in her left shoulder around May of 2013," but an MRI did not reveal abnormalities, (*Id*.); (iv) Plaintiff testified, at her most recent hearing, that "between 2013 and 2015, she had been limited to (and also allowed to) lift and carry up to 20 pounds by her physicians," (*Id*.).  Thus, "[w]hile the ALJ did not discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3), [s]he provided specific reasons for h[er] credibility determination." *See Cichocki*, 534 F. App'x at 76; *see also Franco v. Saul*, 16-CV-5695 (LMS), 2020 WL 4284157, at *20 (S.D.N.Y. July 27, 2020) (substantial evidence supported ALJ's credibility determination where "the ALJ did not expressly consider each factor listed in the regulations, [but] he addressed those that were relevant to Plaintiff's claim," including "the alleviative effects of medication and physical therapy, as reflected in Plaintiff's progress notes," and "Plaintiff's testimony as to his ability to perform numerous activities of daily living, such as grocery shopping, cooking, cleaning his apartment, reading, watching television, and taking public transportation by himself, which provided further support for the ALJ's conclusion that Plaintiff was not precluded from all work activity").  Accordingly, "it was within the ALJ's discretion to discount Plaintiff's subjective complaints of pain." *Koehler v. Comm'r of Soc. Sec*., 20-CV-7707 (JCM), 2022 WL 875380, at *16 (S.D.N.Y. Mar. 24, 2022) (ALJ's credibility determination proper where considered Plaintiff's testimony at hearing, complaints of pain, treatment notes,

pain relief from medication and "her function report, in which she attested to fixing her own breakfast of cereal, eggs, and toast every day").

In sum, the Court is able to "glean the rationale of the ALJ's decision," *Cichocki*, 534 F. App'x at 76, as to Plaintiff's credibility.  However, given that the Court has determined that remand is proper for correct application of the treating physician rule, and the ALJ's proper evaluation of Dr. Tallaj's opinions will "necessarily impact the ALJ's credibility analysis," *Mortise v. Astrue*, 713 F. Supp. 2d 111, 125 (N.D.N.Y. 2010), "the Court is unable to [definitively] conclude that the ALJ properly evaluated [Plaintiff's] credibility" at this time. *Roman v. Saul*, 19-CV-3688 (JLC), 2020 WL 4917619, at *23 (S.D.N.Y. Aug. 21, 2020).  Thus, on remand, "the ALJ should revisit her credibility determination and reconfirm or revise it as appropriate." *Id.* (finding remand warranted for proper application of treating physician rule and determining that, although "the evidence in the record tend[ed] to support the ALJ's credibility determination," the court was unable to determine whether the ALJ properly evaluated the plaintiff's credibility).

## E.  Remedy

Plaintiff argues that the Commissioner's decision "should be reversed and remanded solely for a calculation and award of benefits" from February 13, 2013 through May 22, 2015. (Pl. Br. at 17).  Alternatively, Plaintiff requests that the case should be remanded for a new hearing and decision. (*Id.*).

"A court can reverse and remand solely for the calculation of benefits when 'substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits.'" *Suarez v. Colvin*, No. 13-CV-5236 (LTS) (GWG), 2014 WL 5099207, at *14 (S.D.N.Y. Oct. 1, 2014), *report and recommendation adopted*, 2014 WL 5824538 (S.D.N.Y.

Nov. 10, 2014) (quoting *Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir.1996)).  However, reversal without remand is "atypical" and is only appropriate where "there is 'persuasive proof of disability' in the record and further proceedings would be of no use." *Karabinas v. Colvin*, 16 F. Supp. 3d 206, 220 (W.D.N.Y. 2014) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)).  Remand "for further development of the evidence" is the appropriate remedy where there are "gaps in the administrative record or the ALJ has applied an improper legal standard." *Parker*, 626 F.2d at 235; *Suarez*, 2014 WL 5099207, at *14 (same).

Here, the Court does not find persuasive proof of disability that indicates further administrative proceedings would be futile.  Accordingly, a remand solely for calculation of benefits would not be appropriate in this case.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is granted in part and denied in part, the Commissioner's cross-motion is denied, and the case is remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Opinion and Order.  The Clerk of the Court is respectfully requested to terminate the pending motions (Docket Nos. 18 and 21), and close the case.

Dated:    February 17, 2023
          White Plains, New York

                                   SO ORDERED:

                                   JUDITH C. McCARTHY
                                   United States Magistrate Judge